UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONALD J. HINSON,

    Plaintiff,

v.                                           Case No: 8:17-cv-2039-T-27MAP

GRADY JUDD, in his official
capacity as Sheriff of the Polk County
Sheriff's Office, *et al.*,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendants' Motion to Dismiss Plaintiff's Amended Complaint with Incorporated Memorandum of Law (Dkt. 35), and Plaintiff's opposition (Dkt. 46). Upon consideration, the motion is **GRANTED**.

I.    **BACKGROUND**

Plaintiff Donald J. Hinson brought this action alleging violations of his civil rights under the provisions of 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment, arising from an attack he suffered while detained in the custody of Defendants.

On August 25, 2013, Plaintiff surrendered himself to the custody of the Polk County Sheriff's Office ("PCSO"). (Dkt. 34 ¶¶ 15, 19). As a pretrial detainee, he was placed in holding cell number four with at least one other detainee, William Edwards.[1] (Id. ¶¶ 15, 22).

---

[1] Edwards, a registered felon, was in custody for violating a non-expiring injunction for protection against repeat violence. (Id. ¶ 20).

1

Edwards had a long history of violence and mental illness.[2] He had been arrested by PCSO at least 16 times. (Id. ¶ 25). In 2002, he was tried for murder and found not guilty by reason of insanity. (Id. ¶ 26, n. 1). And in 2012, he was convicted of multiple violent crimes. (Id. ¶ 27). When in custody, Edwards continued to demonstrate violent behavior. (Id. ¶ 28). He attacked or fought other inmates or detainees on least 12 occasions, including a 2006 attack in which he attempted to slit his cellmate's throat. (Id. ¶¶ 31, 32). He also made 18 documented suicide attempts while in PCSO custody. (Id. ¶ 30).

Edwards and Plaintiff had no prior interaction or relationship before the events alleged in the Amended Complaint. (Id. ¶ 24). Nonetheless, while occupying holding cell number four together on August 25, 2013, Edwards attacked Plaintiff unprovoked. (Id. ¶¶ 16, 23). The attack resulted in numerous injuries to Plaintiff, including facial bone fractures and closed head trauma. (Id. ¶ 50).

Plaintiff contends that PCSO was on notice of Edwards' violent nature and failed to take necessary measures to protect him and other pretrial detainees from Edwards. (Id. ¶ 36). In support, Plaintiff relies on a PCSO form entitled, "Arresting/Transporting Officer Information" used during Edwards' detention and signed by the receiving detention deputy, Defendant Elizabeth Conde - Badge Number 7238. (Id. ¶ 34). He alleges this form indicated Edwards' history of mental illness and provided instructions to "notify Intake Sergeant" upon his arrival at the jail. (Id.).

Originally, Plaintiff filed a ten-count complaint against several named and unnamed PCSO detention deputies in their individual capacities, and against Sheriff Grady Judd, in his official capacity. Defendants then moved to dismiss the complaint, and their motion was granted. (Dkt. 29).

---

[2] According to the Amended Complaint, "Polk County Jail documents show that Edwards was schizophrenic and bipolar, among other things." (See Dkt. 34, ¶ 29).

Plaintiff filed his Amended Complaint (Dkt. 34), which Defendants have again moved to dismiss. (Dkt. 35).

## II.  STANDARD

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court's scope of review on a motion to dismiss must be limited to the four corners of the complaint. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

"The complaint must contain enough facts to make a claim for relief plausible on its face." *Id.* This occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal citation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Therefore, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. In each instance, this determination is "a context-specific task that requires the reviewing court to draw on

its judicial experience and common sense." *Id.* (internal citation omitted).

Although it is axiomatic that the allegations of the Amended Complaint must be accepted for purposes of Defendants' motion, this is "inapplicable to legal conclusions." *Id.* at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. And all reasonable inferences must be drawn in Plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

## III. DISCUSSION

### § 1983 Claims Against Defendants Conde, Swenson and Rodriguez (Counts I-III)

Plaintiff alleges his civil rights were violated by Detention Deputy Conde, Detention Deputy Swenson and Sergeant Rodriguez when they failed to protect him from Edwards. (*See* Dkt. 34 ¶¶ 51-68). Defendants Conde, Swenson and Rodriguez contend that the Amended Complaint fails to allege sufficient facts supporting Plaintiff's claims. (Dkt. 35, pp. 3-9). And they assert qualified immunity.[3] (Id. at pp. 9-12).

Defendants' first contention is well-taken. While Plaintiff named one of the previously unnamed Deputy Defendants and added allegations in an attempt to state a plausible claim, the Amended Complaint includes no factual allegations connecting Defendants Conde, Swenson or Rodriguez to the alleged attack. "In any § 1983 case, we must begin our analysis by identifying 'the precise constitutional violation' the defendant has allegedly committed." *Alcocer v. Mills*, 906 F.3d 944, 952 (11th Cir. 2018) (quoting *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (per curiam). At most, viewing the allegations in a light most favorable to Plaintiff, Defendant Conde was

---

[3] Because the Amended Complaint does not include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556), Defendants' qualified immunity contention need not be addressed at this time.

4

present on the day of the attack, having taken custody of Edwards from the arresting officer. Notwithstanding, the factual allegations are insufficient to create even an inference that Conde was responsible for placing the two together in the holding cell or even aware of Edward's history of violence. As for Defendants Swenson and Rodriguez, the allegations are too vague and conclusory to connect their actions to the attack on Plaintiff. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Defendants Conde, Swenson and Rodriguez are therefore entitled to dismissal. *Id.* Notwithstanding, because facts may exist that support Counts I-III, pursuant to Fed. R. Civ. P. 15(a), justice requires Plaintiff be granted an opportunity to amend. Accordingly, Counts I, II, and III are **DISMISSED** *without prejudice*.

### § 1983 Claim Against Defendant Judd (Count IV)

In Count IV, Plaintiff alleges Defendant Judd, as a state actor in his capacity as Polk County Sheriff, violated his civil rights. Specifically, Plaintiff alleges Judd "established, encouraged, and condoned a booking processing system where one cell was over utilized for the placement of both violent and non-violent persons," "promoted and maintained a policy that comingled [sic] violent and non-violent detainees," and "encouraged, tolerated, ratified and has been indifferent to" PCSO policies that resulted in the "denial of life, liberty or property without due process" in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. (Dkt. 34 ¶¶ 73-75, 77). He contends these polices and practices require "more or different training, supervision, investigation or discipline" in areas such as the duties and responsibilities of detention deputies and supervisors "to ensure proper classification at booking to ensure inmates a safe environment." (Id. ¶ 75).

Judd may only be held liable as a state actor under § 1983 if the alleged constitutional

violations resulted from the execution of an official policy or custom. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-94 (1978). The failure to provide adequate training can constitute a policy or custom if the deficiency evidences a "'deliberate indifference' as to its known or obvious consequences." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997). The policy or custom must be the "moving force" behind the alleged constitutional deprivation. *Monell*, 436 U.S. at 694; *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

In his Amended Complaint, Plaintiff fails to allege facts to support his contention that Judd's failure to train in the specified areas was the moving force behind the alleged constitutional deprivation. *See Sewell*, 117 F.3d at 489. Rather, in conclusory fashion, Plaintiff alleges "[b]ecause there was no policy of separation, Defendant Judd is the moving force behind Plaintiff's constitutional rights."[4] (Dkt. 34, ¶ 74). And, Plaintiff fails to plead facts demonstrating Judd's deliberate indifference to the obvious consequences of alleged deficient training. *See Brown*, 520 U.S. at 407. There are simply no facts alleged in the Amended Complaint that identify a pattern of constitutional violations of which Sheriff Judd was both aware of and deliberately indifferent to. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). Rather, the allegations pertain to the isolated incident involving Plaintiff and Edwards. This prevents the drawing of a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Notwithstanding,

---

[4] Plaintiff's response (Dkt. 46) is not well-taken. His arguments consist largely of recitations of allegations from his Amended Complaint, and also includes facts that are outside the four-corners of the pleading. (See Dkt. 46, pp. 12-13). *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003) (In determining whether to grant a motion to dismiss under Rule 12(b)(6), evidence outside the pleadings may not be considered.).

because facts may exist to support Count IV, justice requires that Plaintiff be granted an opportunity to amend. Count IV is therefore due to be **DISMISSED** *without prejudice*.

### Negligence Claim Against Defendant Judd (Count V)

In Count V, Plaintiff alleges a Florida negligence action against Defendant Judd in his official capacity. (Dkt. 34 ¶¶ 78-86). He contends Judd is vicariously liable for the injuries caused by the acts or omissions of the deputies and sergeant employees "acting within the scope of their employment and without bad faith, malicious intent or in a manner exhibiting wanton and willful disregard" of Plaintiff's human rights. (Id. ¶ 81). Judd argues that Count V must be dismissed because it is barred by sovereign immunity. (Dkt. 35, pp. 19-20). In negligence actions, sovereign immunity may bar an action for breach of a duty. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1117 (11th Cir. 2005) (citing *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004)).

"[B]asic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity." *Id.* A discretionary function "is one in which the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene . . . it would inappropriately entangle itself in fundamental questions of policy and planning were it to entertain the plaintiff's tort claim." *Cook*, 402 F.3d at 1117-18 (citing *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999)). "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Id.* at 1118.

In Florida, the "operation and maintenance" of prisons is a discretionary function of the sheriff, as an independent officer under the Florida Constitution. *See White v. Palm Beach Cnty.*, 404

7

So. 2d 123, 125 (Fla. 4th DCA 1981). A function of operating and maintaining prisons is the classification and placement of inmates. *Davis v. State of Fla., Dep't of Corrections*, 460 So. 2d 452, 453 (Fla. 1st DCA 1984). Nevertheless, the Florida Supreme Court has held that assigning pretrial detainees to particular locations in a detention facility where they are foreseeably exposed to danger can be an operational level act not protected by sovereign immunity. *See Dep't of Health & Rehab. Servs. v. Whaley*, 574 So. 2d 100, 104 (Fla. 1991) (holding that the assignment of juveniles to a particular room or location in a detention facility during intake is an operational function not protected by sovereign immunity).

As stated previously (Dkt. 29), Judd's entitlement to the defense of sovereign immunity therefore depends on whether Plaintiff's claims are based on policies concerning general classification and placement of inmates and detainees or on the specific assignment of Plaintiff to a location in the Polk County jail where he foreseeably faced danger from Edwards. In his Amended Complaint, Plaintiff attempts to plead a plausible claim by alleging that "the assignment of Plaintiff, a pretrial detainee, to cell four in the booking area where there was a foreseeable exposure to danger is an operational act not protected by sovereign immunity." (Dkt. 34 ¶ 84). However, when taking Plaintiff's allegations as a whole, even considering them in the light most favorable to Plaintiff, they allege actions that result from a discretionary policy decision concerning the classification and placement of inmates generally, not from the specific placement of Plaintiff in holding cell number four with Edwards. *(See* Dkt. 34 ¶ 83(a)-(g)).[5] Accordingly, the affirmative defense of sovereign

---

[5] For example, Plaintiff alleges, "The constitutional deficiency within the booking area is that the processing regime has no standardized protocol to determine the threat risks of a detainee. Once processed through housing classifications, inmates can have special designations that include security codes. . . . The booking process contains no such red flag system." (Dkt. 34 ¶ 42). And Defendant Judd "breached his official capacity duty of care by failing to develop even a rudimentary system to flag and alert detention deputies processing people through booking about dangerous detainees. Defendant Judd failed to implement any policies that required an alert be placed

8

immunity appears on the face of the Amended Complaint and dismissal is therefore appropriate. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint.") (citing *Jones v. Bock*, 549 U.S. 199, 214-15 (2007)). Notwithstanding, because facts may exist that support Count V, justice requires Plaintiff be granted an opportunity to amend. Accordingly, Count V is **DISMISSED** *without prejudice*.

## IV. CONCLUSION

Plaintiff is granted leave to file a second amended complaint within **twenty (20) days** of the date of this Order or file a notice of his election not to amend.[6] Within **fourteen (14) days** of the filing of Plaintiff's second amended complaint or notice, Defendants shall respond. Accordingly, Defendants' Motion for Summary Judgement (Dkt. 51) is **DENIED** *as moot*. The Case Management and Scheduling Orders (Dkts. 21, 33) are amended as follows:

---

on the files of former detainees who had been violent, mentally ill or committed crimes while in custody at the Polk County jail." (Id. ¶ 83).

[6] Plaintiff's Amended Complaint possesses the characteristics of an impermissible shotgun pleading. *See Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1354 (11th Cir. 2018) ("The amended complaint was . . . a shotgun pleading: it incorporated all the factual allegations into each count without delineating which allegations pertained to each count."). Each count incorporates all fifty (50) paragraphs of the general factual allegations. "'Consequently, allegations of fact that may be material to a determination of count one, but not count four, are nonetheless made a part of count four . . . . [I]t is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1125-26 (11th Cir. 2014) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)). Indeed, some allegations are inconsistent with certain claims, but are nevertheless incorporated into those claims. For example, it is not apparent how the allegation that "The current Chief of the sheriff's office, Michael Allen's, duties include . . ." (Dkt 34, ¶ 18) is relevant to the failure to protect claim brought in Count III against Sergeant Rodriguez.

| | |
|---|---|
| Dispositive/Daubert Motion Deadline | **May 10, 2019** |
| Pretrial Conference | **August 8, 2019 at 10:30 A.M.** |
| Trial Term | **September 3, 2019** |

**DONE AND ORDERED** this 19th day of February, 2019.

*[signature]*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record